# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **SOUTHERN COAL CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:  1:17-CV-01104-AT** |
| | ) |
| **DRUMMOND COAL SALES, INC.,** | ) |
| | ) |
| **Defendant/Counterclaim Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **SOUTHERN COAL CORPORATION and JAMES C. JUSTICE, II,** | ) |
| | ) |
| **Counterclaim Defendants.** | ) |

## DRUMMOND COAL SALES, INC.'S
## <u>ANSWER TO THE COMPLAINT AND COUNTERCLAIMS</u>

COMES NOW Drummond Coal Sales, Inc. ("Drummond") and submits this

Answer to Plaintiff Southern Coal Corporation's ("Southern Coal") Complaint

filed on March 27, 2017.  Pursuant to Rule 13 of the *Federal Rules of Civil*

*Procedure*, Drummond also counterclaims against Southern Coal and Third-Party Defendant James C. Justice, II.

## ANSWER TO COMPLAINT

1.     Drummond admits that Southern Coal's Complaint requests relief in the form of a declaratory judgment. Drummond also admits that Exhibit 1 to Southern Coal's Complaint contains a partial copy of the Bulk Coal Transfer and Storage Agreement dated October 3, 2013 (the "Agreement"). Drummond avers that Exhibit 1 is an incomplete copy of the Agreement, in that it omits Appendix 1 to the Agreement, which is a Guarantee executed by James C. Justice, II. Drummond denies all other allegations in Paragraph 1.

2.     On information and belief, admitted.

3.     Drummond admits that it is an Alabama corporation with its principal place of business located in Vestavia Hills, Alabama. Drummond denies the remainder of Paragraph 3 of Southern Coal's Complaint as drawing a legal conclusion.

4.     Drummond admits that this action is between citizens of different states and that the amount in controversy, excluding interest and costs, exceeds $75,000. The remainder of this paragraph consists of legal conclusions to which no response is required.

5.      This paragraph consists of legal conclusions to which no response is required.

6.      Admitted that Paragraph 6 of the Complaint sets forth the language of Section 20.7 of the Agreement.   Further admitted that that Section 20.7 of the Agreement states that "[e]ach party waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in the United States District Court for the Northern District of Georgia, Atlanta Division, and further waives and agrees not to plead or claim in any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum."   To the extent the remaining allegations purport to state a legal conclusion, no response is required.

7.      Drummond responds to the allegations of Paragraph 7, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

8.      Drummond responds to the allegations of Paragraph 8, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

9.     Drummond responds to the allegations of Paragraph 9, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

10.     Drummond responds to the allegations of Paragraph 10, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

11.     Drummond denies the allegations in Paragraph 11 as incomplete and misleading, as any increase in the "Throughput Fee" under the Agreement is not dependent on the "effort" of Southern Coal or Drummond.

12.     Denied.

13.     Denied.

14.     Admitted that Drummond sent Southern Coal the invoice dated October 25, 2016 and attached as Exhibit 2 to Southern Coal's Complaint.  Also admitted that this invoice was for $1,380,000.  All other allegations in Paragraph 14 are denied.

15.     Admitted that the invoice attached as Exhibit 2 to Southern Coal's Complaint contained the word "Benchmark."  All other allegations in Paragraph 15 are denied.

16.     Admitted   that   Drummond   sent   Southern   Coal   invoices   dated

November 2, 2016 and December 1, 2016, both of which were for $1,380,000.  All other allegations in Paragraph 16 are denied.

17.    Admitted that Southern Coal remitted payment to Drummond for the invoices dated October 25, 2016, November 2, 2016, and December 1, 2016.  All other allegations in Paragraph 17 are denied.

18.    Admitted that the invoices dated October 25, 2016, November 2, 2016, and December 1, 2016 contained the word "Benchmark."   All other allegations in Paragraph 18 are denied.

19.    Admitted that Drummond sent Southern Coal the invoice dated January 3, 2017 and attached as Exhibit 3 to Southern Coal's Complaint.  Also admitted that the amount of this invoice was $1,965,000.  All other allegations in Paragraph 19 are denied.

20.    Denied.

21.    Drummond is presently without sufficient information to either admit or deny the allegations of Paragraph 21.  As such, those allegations are denied.

22.    Admitted that Drummond received the letter attached as Exhibit 4 to Southern Coal's Complaint.  All other allegations in Paragraph 22 are denied.

23.    Admitted.

24.    Denied.

25.     Drummond responds to the allegations of Paragraph 25, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

26.     Drummond responds to the first sentence of Paragraph 25, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.  The second sentence of Paragraph 25 is denied.

27.     The first sentence of Paragraph 27 consists of a legal conclusion to which no response is required.  The remaining allegations of Paragraph 27 are denied.

28.     Drummond responds to the allegations of Paragraph 28, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.  Any remaining allegations of Paragraph 28 are denied.

## Count One

29.     Drummond adopts and incorporates its responses to the preceding paragraphs as if set forth fully herein.

30.     Drummond responds to the allegations of Paragraph 30, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

31.     Drummond responds to the allegations of Paragraph 31, purporting to

describe the terms of the Agreement, by stating that the Agreement will speak for itself.

32.    Drummond responds to the allegations of Paragraph 32, purporting to describe the terms of the Agreement, by stating that the Agreement will speak for itself.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

**<u>Count Two</u>**

39.    Drummond adopts and incorporates its responses to the preceding paragraphs as if set forth fully herein.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.   Denied.

46.   Denied.

## Prayer for Relief

Drummond denies the assertions appearing in the unnumbered paragraphs following Paragraph 46 of the Complaint, including subparagraphs A through E therein.  Drummond denies that Southern Coal is entitled to any relief whatsoever.

## DEFENSES

Without assuming the burden where it otherwise lies with Plaintiff, Drummond asserts the following defenses:

1.   The Complaint fails to state a claim upon which relief may be granted.

2.   Southern Coal's claims are barred by its own breach of contract, including the breach of the covenant of good faith and fair dealing.

3.   Southern Coal has failed to satisfy all conditions precedent to filing suit, including the presentment, in good faith, of claims for informal resolution.

4.   Southern Coal has failed to mitigate any damages and/or costs.

5.   Southern Coal's claims are barred, in whole or in part, by the doctrine of estoppel.

6.   Southern Coal's claims are barred, in whole or in part, by the doctrine of unclean hands.

7.     Southern Coal's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

8.     Southern Coal's claims for relief are barred, in whole or in part, by the doctrine of consent and acquiescence.

9.     Southern Coal's claims for relief are barred, in whole or in part, by the doctrine of *in pari delicto*.

10.    Southern Coal's claims for damages are barred, in whole or in part, by the limitations of liability contained in contractual provisions agreed to by Southern Coal.

11.    Any relief sought by Southern Coal is completely offset by Drummond's counterclaim damages and/or the doctrines of indemnification and contribution.

12.    Southern Coal's claims for relief are barred, in whole or in part, by the voluntary payment doctrine.

13.    Southern Coal's claims for relief are barred, in whole or in part, by the doctrine of waiver.

### RESERVATION OF RIGHTS

Drummond hereby reserves the right, upon completion of its investigation and discovery, to assert such additional defenses, counterclaims and/or additional

claims as may be appropriate.

## COUNTERCLAIMS

1.      Counterclaim plaintiff Drummond is an Alabama corporation with its principal place of business in Vestavia Hills, Alabama.

2.      Upon information and belief, Counterclaim Defendant Southern Coal is a Delaware corporation with its principal place of business in Roanoke, Virginia.

3.      Upon information and belief, Counterclaim Defendant James C. Justice, II ("Justice"), is a citizen of West Virginia who resides in West Virginia.[1] He is the President of Southern Coal and personally guaranteed the Agreement on behalf of Southern Coal.[2]  A copy of that Guarantee is attached hereto as Exhibit 1.  Counterclaim Defendant Justice is sued in his capacity as the Guarantor of Southern Coal's obligations under the Agreement.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Drummond's counterclaims because this action is between citizens and residents of different

---

[1] Southern Coal and Justice are collectively referred to herein as the "Counterclaim Defendants."

[2] "Agreement" refers to the Bulk Coal Transfer and Storage Agreement dated October 3, 2013.  *See* Doc. 1-1 and Exhibit 1 attached hereto.

states and because the amount in controversy, excluding interest and costs, exceeds $75,000.  28 U.S.C. § 1332.

5.    Venue is proper in this Court under Section 20.7 of the Agreement.

6.    Jurisdiction and venue is also proper as to Counterclaim Defendant James C. Justice, II under Section 13 of the Guarantee.  *See* Exhibit 1 at § 13.

## FACTS

7.    On or about October 3, 2013, Drummond and Southern Coal entered into the Agreement.  The term of the Agreement is four years, from January 1, 2014 through December 31, 2017.

8.    The Agreement requires Southern Coal to pay a minimum monthly Throughput Fee of $1,000,000 in exchange for services relating to, *inter alia*, the storing, blending and transfer of coal.

9.    Southern Coal has not met the 2,000,000 ton minimum set forth in the Agreement.

10.    Section 6.14 of the Agreement provides as follows:

Charges and Fee Adjustment: Beginning on January 1, 2014 and on the first day of each subsequent calendar quarter during the Term, all charges and fees contained in this Agreement shall be increased by the change in the Peak Downs metallurgical benchmark price (Benchmark). (Except other charges in sections 6.8 and 6.12 which shall be escalated per section 6.13). The Benchmark shall be stated in $ per metric ton and the base amount shall be $145.00 per MT (CY Q3 Benchmark). Any determination pursuant to this Section shall not

be applied if the resulting change would be below the rates or charges as set forth herein. For clarity, all rates or changes (other than Sections 6.8 and 6.12) as set forth in this Agreement will only be adjusted upward as a result of an increase in the Benchmark. An example for illustrative purposes of the first Throughput Fee quarterly adjustment beginning January 1, 2014: CY Q4 Benchmark $140 per metric ton; no adjustment to be made. CY Q4 Benchmark $150 per metric ton; 150/145 x $6.00 per net ton = $6.21 per net ton effective January 1, 2014.

Doc. 1-1 at 11.

11.    The purpose of Section 6.14 of the Agreement is to fairly compensate Drummond for the services provided under the Agreement by indexing payment for those services to the prevailing market prices for metallurgical coal and by adjusting the Throughput Fee to account for any significant market-wide increase in metallurgical coal prices.   Section 6.14 also provides Southern Coal with assurance that the price it pays for the services under the Agreement will be a fair market price.   Drummond and the Counterclaim Defendants understood and intended that this was the purpose of Section 6.14 at the time Drummond and Southern Coal entered into the Agreement.

12.    The term "Peak Downs" in Section 6.14 of the Agreement was understood by the parties, and by those in the coal industry, as referring to a quarterly benchmark market price of high quality metallurgical coal sold and shipped to Japanese steel manufacturers.  Historically, BHP Billiton would set the

standard by agreeing to a quarterly price with the Japanese steel manufacturers for each quarter from coal from its Peak Downs mine in Australia, and it was usually agreed upon in the month preceding the quarter.  The metallurgical coal industry therefore referred to this benchmark as the "Peak Downs" benchmark price.  Since BHP Billiton no longer sets a quarterly price for its Peak Downs coal other Australian producers have taken up the role of setting the quarterly benchmark for high quality metallurgical coal sold and shipped to Japanese steel manufacturers. The benchmark is still being set and used by the metallurgical coal industry, it is simply no longer set by BHP Billiton.  The metallurgical quarterly benchmark still exists for high quality metallurgical coal between Australian producers and Japanese steel manufacturers.  It is simply a gauge that coal buyers and sellers use in pricing the sale of metallurgical coal throughout the world.

13.    At the time the parties entered into the Agreement, the market price for metallurgical coal shipped from Australian coal mines to Japanese steelmakers was below $145 per metric ton.  Accordingly, prior to mid 2016, Section 6.14 of the Agreement was not triggered.

14.    In 2016, the market price of metallurgical coal started to rise.  By the fourth quarter of 2016, the market price of metallurgical coal shipped from

Australian mines to Japanese steel manufacturers was higher than the $145 per metric ton floor price set forth in Section 6.14 of the Agreement.

15.    By that date, however, BHP Billiton had moved away from setting a quarterly price and instead relied on spot pricing.  The coal industry was not left without a benchmark, however, and still looked to whichever price is set by the first quarterly price contract for high quality metallurgical coal between Australian producers and Japanese steel manufacturers.  These quarterly benchmarks are published in a variety of coal industry publications, including those published by Doyle Trading Consultants.

16.    Doyle Trading Consultants is an internationally recognized energy research and consultant firm that specializes in the thermal and metallurgical coal sectors.[3]

17.    In October 2016, Drummond invoiced Southern Coal for a Throughput Fee utilizing the quarterly benchmark price for metallurgical coal mined in Australia and shipped to Japanese steel manufacturers as published by Doyle Trading Consultants.

18.    This quarterly benchmark is an objective figure compiled and published by a disinterested third party that accurately reflects the prevailing

---

[3] *https://www.doyletradingconsultants.com/* (last visited May 30, 2017).

market price for metallurgical coal mined in Australia and shipped to Japanese steel manufacturers.

19.   On or about October 25, 2016, Drummond sent Southern Coal an invoice for payment of the increase in the Throughput Fee utilizing a $200 quarterly benchmark price figure published in Doyle Trading which reflected the market price of metallurgical coal shipped from Australia to Japanese steel manufacturers.  Doc. 1-2.  Southern Coal paid this invoice on November 28, 2016.

20.   On or about November 2, 2016, Drummond sent Southern Coal an invoice for payment of the Throughput Fee utilizing a $200 quarterly benchmark price figure published in Doyle Trading which reflected the market price of metallurgical coal shipped from Australia to Japanese steel manufacturers. Southern Coal paid this invoice in two installments on December 5, 2016 and on December 15, 2016.

21.   On or about December 1, 2016, Drummond sent Southern Coal an invoice for payment of the Throughput Fee utilizing a $200 quarterly benchmark price figure published in Doyle Trading which reflected the market price of metallurgical coal shipped from Australia to Japanese steel manufacturers. Southern Coal paid this invoice on January 6, 2017.

22.   On or about January 3, 2017, Drummond sent Southern Coal an invoice for payment of the Throughput Fee utilizing a $285 quarterly benchmark price figure published in Doyle Trading which reflected the market price of metallurgical coal shipped from Australia to Japanese steel manufacturers.  Doc. 1-3.  The amount of the January 3, 2017 invoice was $1,965,000.

23.   Since January 3, 2017, Drummond has continued to utilize the quarterly benchmark price published by Doyle Trading for metallurgical coal mined in Australia and shipped to Japanese steel manufacturers in order to calculate the Throughput Fee invoiced to Southern Coal.

24.    In response to the January 3, 2017 invoice, Southern Coal paid Drummond $1,000,000, but withheld payment of the remaining $965,000.

25.   Since January 3, 2017, Southern Coal has failed and refused to pay the agreed upon minimum Throughput Fee under the Agreement.

26.   Since January 3, 2017, Southern Coal has also failed and refused to pay any increase in the minimum Throughput Fee under the Agreement.

27.   Drummond's use of the quarterly benchmark published by Doyle Trading to calculate the Throughput Fee was and is consistent with the parties' mutual intent in entering into the Agreement.  Specifically, it is consistent with the parties' mutual intent that Drummond would receive, and Southern Coal would

pay, the fair market value for the services provided to Southern Coal under the Agreement.  It was also consistent with the parties' use of the term "Peak Downs," which was understood by the parties, and by those in the coal industry, as referring to a quarterly benchmark market price of high quality metallurgical coal sold and shipped to Japanese steel manufacturers.

28.    At all times since Drummond and Southern Coal entered into the Agreement, and continuing to present day, Drummond has been ready, willing and able to perform its obligations under the Agreement.

29.    Drummond has never failed or refused to perform any of its obligations under the Agreement.

30.    Not only has Drummond never repudiated the Agreement, but, upon information and belief, Southern Coal has allowed a third party to utilize the capacity and services provided under the Agreement as recently as May 15, 2017, despite averring that it "is authorized to treat the Agreement as terminated and does so."

31.    Section 23 of Agreement is titled "**Savings Clause**" and provides that "[i]f any section, subsection, paragraph or provision of this Agreement shall be declared invalid by any court of competent jurisdiction, then such a judicial determination shall not affect the remaining sections, subsections, paragraphs or

provisions of this Agreement, and each such other section, subsection, paragraph, or provision shall remain in full force and effect."

32.    Southern Coal has never challenged the validity or enforceability of Section 23 of the Agreement.

## CAUSES OF ACTION

## COUNTERCLAIM ONE - DECLARATORY JUDGMENT

33.    Drummond adopts and incorporates herein Paragraphs 1 through 32 of its Counterclaims.

34.    Drummond brings this declaratory judgment count pursuant to 28 U.S.C. §§ 2201 and 2202.

35.    Based upon the facts and circumstances set forth herein and the terms of the Agreement at issue, there presently exists a justiciable controversy as to whether Southern Coal has fulfilled its obligations under the Agreement, including Southern Coal's payment of the minimum Throughput Fee and the applicable increases thereto.

36.    Drummond avers that a bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to the Agreement.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)    That this Court take jurisdiction over this cause for declaratory judgment;

(B)    That this Court order, adjudge, and decree that this is a proper case for an action for declaratory judgment and that there is a bona fide controversy between the parties as to their legal rights, status and liability;

(C)    That this Court would declare the rights, status, and legal relations of the parties under the Agreement;

(D)    That this Court will declare that Drummond's use of the Doyle Trading benchmark price to calculate the monthly Throughput Fee is in good faith and consistent with the parties' mutual purpose and intent in entering in the Agreement;

(E)    That this Court will order, adjudge, and decree that Southern Coal is legally obligated to fulfill all of its obligations under the Agreement, including the payment of the minimum Throughput Fee and any applicable increases thereto for the entire term of the Agreement;

(F)    That, alternatively, and in the event this Court finds that the rate escalation provisions of Section 6.14 of the Agreement are not enforceable, this Court, consistent with the provisions of Section 23 of the Agreement, will order, adjudge and decree that Southern Coal is legally obligated to pay the minimum Throughput Fee for the entire term of the Agreement; and

(G)    That Drummond be provided any other further and different relief as to which it is entitled, including its attorneys' fees and costs, and any interest owed by the Counterclaim Defendants.

## COUNTERCLAIM TWO - BREACH OF CONTRACT

37.    Drummond adopts and incorporates herein Paragraphs 1 through 36 of its Counterclaims.

38.    The Agreement between Drummond and Southern Coal constitutes an enforceable contract between the parties into which both Drummond and Southern Coal entered voluntarily.

39.    At all times since Drummond and Southern Coal entered into the Agreement, and continuing to present day, Drummond has been ready, willing and able to perform its obligations under the Agreement.

40.    Drummond has never failed or refused to perform any of its obligations under the Agreement.

41.    In exchange for the services provided under the Agreement, Southern Coal is obligated to pay a Throughput Fee pursuant to Section 6.1 of the Agreement.

42.    Since January 2017, Southern Coal has failed and refused to pay any increase in the Throughput Fee.

43.    Southern Coal ceased paying the Throughput Fee altogether as of February 2017.

44.    Under the Agreement, Southern Coal is obligated to pay Drummond the minimum monthly Throughput Fee through the term of the Agreement.

45.     Southern Coal has breached its contractual obligation under the Agreement to pay Drummond the monthly minimum Throughput Fee of $1,000,000 per month.

46.     Under the Agreement, Southern Coal is obligated to pay Drummond any applicable increases in the monthly Throughput Fee through the term of the Agreement.

47.     Southern Coal has breached its contractual obligation under the Agreement to pay Drummond the applicable increases to the monthly Throughput Fee.

48.     Drummond has suffered damages as a result of Southern Coal's breaches of the Agreement in the form of lost revenue and profits.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)     Find that Southern Coal has breached the Agreement by failing to pay the monthly minimum Throughput Fee of $1,000,000, and the applicable increases thereto;

(B)     Award Drummond damages for Southern Coal's breach of contract in the amount of the Throughput Fee of $1,000,000 per month for each month Southern Coal has failed to pay the Throughput Fee, including any applicable interest pursuant to Section 15 of the Agreement;

(C)     Award Drummond damages for Southern Coal's breach of contract in the amount of the increases in the monthly Throughput Fee for each

month Southern Coal has failed to pay those increases, including any applicable interest pursuant to Section 15 of the Agreement;

(D)     Order the Counterclaim Defendants to pay all of Drummond's expenses, including, without limitation, all reasonable fees and expenses of outside counsel that Drummond paid or incurred in enforcing or asserting its rights under the Agreement;

(E)     Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

## COUNTERCLAIM THREE - SPECIFIC PERFORMANCE

49.     Drummond adopts and incorporates herein Paragraphs 1 through 48 of its Counterclaims.

50.     Drummond requests that this Court grant it the equitable relief of specific performance and enforce its rights under the Agreement.

51.     The Agreement constitutes a valid and legally binding contract.  The Agreement, and the obligations contained therein, are enforceable against the Counterclaim Defendants.

52.     Drummond has fulfilled, and stands ready and able to continue to fulfill, all of its obligations under the Agreement.

53.     Section 6.1 of the Agreement obligates Southern Coal to pay to Drummond a minimum Throughput Fee of $1,000,000 per month for the term of the Agreement.

54.    Despite its ability to perform its obligations, Southern Coal has failed and refused to perform its obligations under Section 6.1 of the Agreement.

55.    Section 6.14 of the Agreement obligates Southern Coal to pay to Drummond certain increases in the Throughput Fee each month for the term of the Agreement.

56.    Despite its ability to perform its obligations, Southern Coal has failed and refused to perform its obligations under Section 6.14 of the Agreement.

57.    Drummond has no adequate remedy at law.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)    Find that the Southern Coal breached the Agreement by refusing to pay Drummond the minimum Throughput Fee of $1,000,000 per month;

(B)    Order the Counterclaim Defendants to perform their obligations under the Agreement as they relate to the payment of the minimum Throughput Fee of $1,000,000 per month, including the payment of any applicable interest pursuant to Section 15 of the Agreement;

(C)    Find that the Southern Coal breached the Agreement by refusing to pay Drummond applicable increases to the monthly Throughput Fee;

(D)    Order the Counterclaim Defendants perform their obligations under the Agreement as they relate to increases in the monthly Throughput Fee, including the payment of any applicable interest pursuant to Section 15 of the Agreement;

(E)     Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

## COUNTERCLAIM FOUR - BEACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

58.     Drummond adopts and incorporates herein Paragraphs 1 through 57 of its Counterclaims.

59.     Within every contract is an implied covenant of good faith and fair dealing.

60.     Southern Coal breached its covenant of good faith and fair dealing by refusing to pay the minimum monthly Throughput Fee.

61.     Southern Coal's stated reason for refusing to pay the minimum monthly Throughput Fee – that the Peak Downs quarterly benchmark is no longer published – is in bad faith and inconsistent with the mutual understanding and intent of the parties in entering into the Agreement.

62.     Southern Coal breached its covenant of good faith and fair dealing by refusing to pay any increase in the monthly Throughput Fee.

63.     Southern Coal's stated reason for refusing to pay any such increases – that the Peak Downs quarterly benchmark is no longer published – is in bad faith and inconsistent with the mutual understanding and intent of the parties in entering into the Agreement.

64.   By refusing to pay both the minimum monthly Throughput Fee and any increase in the monthly Throughput Fee, Southern Coal intended to withhold, and has in fact withheld, from Drummond the benefits due to Drummond under the Agreement.

65.   The Counterclaim Defendants also breached the duty of good faith and fair dealing when they allowed a third party to utilize the capacity and services provided under the Agreement as recently as May 15, 2017, despite Southern Coal's averment that it "is authorized to treat the Agreement as terminated and does so."  Doc. 1 at ¶ 37.

66.   Drummond has been damaged by Southern Coal's breach of the covenant of good faith and fair dealing in the form of lost revenue and profits.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)   Find that the Southern Coal breached its duty of good faith and fair dealing by refusing to pay Drummond the minimum Throughput Fee of $1,000,000 per month;

(B)   Find that the Southern Coal breached its duty of good faith and fair dealing by refusing to pay Drummond applicable increases in the minimum monthly Throughput Fee;

(C)   Award Drummond damages caused by Southern Coal's breach of its duty of good faith and fair dealing, including any applicable interest pursuant to Section 15 of the Agreement;

25

(D)    Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

## COUNTERCLAIM FIVE – BREACH OF CONTRACT AGAINST JAMES C. JUSTICE, II

67.    Drummond adopts and incorporates herein Paragraphs 1 through 66 of its Counterclaims.

68.    The Guarantee attached hereto as Exhibit 1 is a valid and binding contract entered into by Drummond (referred to as "DCS" in the Guarantee) and Counterclaim Defendant James C. Justice, II as Guarantor.

69.    Section 2 of the Guarantee provides as follows:

2.    Guarantee. The Guarantor hereby unconditionally and irrevocably guarantees to DCS the prompt and complete payment and performance by the Company when due of all obligations of the Company under the Agreement (the "Obligations"). The Guarantor further agrees to pay all expenses, including, without limitation, all reasonable fees and expenses of outside counsel which may be paid or incurred by DCS in enforcing or asserting any of their respective rights under this Guarantee. This Guarantee shall remain in full force and effect until the Obligations are paid in full and performed and the Agreement is terminated.

Except as otherwise expressly provided herein, all payment or payments made by the Company or any other person or received or collected by Des from the Company or any other person by virtue of any action or proceeding or any set-off or appropriation or application, at any time or from time to time, in reduction of or in payment of the Obligations shall be deemed to reduce the liability of the Guarantor hereunder which shall, notwithstanding any such

26

payment or payments, remain liable for the remaining unpaid balance of the Obligations as aforesaid until the Obligations are paid in full or the obligations of DCS to provide services under the Agreement are terminated in accordance with the terms of the Agreement.

70.   The Guarantee attached as Exhibit 1 obligates Counterclaim Defendant James C. Justice, II, to pay all amounts that Southern Coal owes to Drummond under the Agreement.

71.   Drummond notified Counterclaim Defendant James C. Justice, II, of Southern Coal's nonpayment of invoices via letter dated March 20, 2017.  Doc. 1-5 (copying James C. Justice, II).

72.   Counterclaim Defendant James C. Justice, II, breached the Guarantee by failing to tender prompt and complete payment to Drummond of all amounts due and owed by Southern Coal under the Agreement.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendant James C. Justice, II as follows:

(A)   Find that Counterclaim Defendant James C. Justice, II, has breached his Guarantee agreement with Drummond;

(B)   Order Counterclaim Defendant James C. Justice, II, to pay to Drummond all amounts due and owed by Southern Coal under the Agreement, including any applicable interest pursuant to Section 15 of the Agreement;

(C)   Order Counterclaim Defendant James C. Justice, II, to pay all expenses, including, without limitation, all reasonable fees and

expenses of outside counsel, which Drummond has paid or incurred in enforcing or asserting its rights under the Guarantee;

(D)    Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

## COUNTERCLAIM SIX - UNJUST ENRICHMENT/QUANTUM MERUIT

73.    Drummond adopts and incorporates herein Paragraphs 1 through 72 of its Counterclaims.

74.    As an alternative claim for relief, and to the extent this Court finds that there is no express contract between Drummond and Southern Coal, Drummond asserts that Southern Coal has been unjustly enriched.

75.    Southern Coal has reaped the benefits of the services provided under the Agreement and/or their ready availability without providing full and fair compensation for those services, causing damage to Drummond.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)    Find that the Southern Coal has been unjustly enriched by not providing full and fair compensation to Drummond for services either actually provided or made readily available to Southern Coal;

(B)    Award Drummond damages flowing from Southern Coal's conduct;

(C)    Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

## COUNTERCLAIM SEVEN – BREACH OF IMPLIED IN-FACT CONTRACT

76.     Drummond adopts and incorporates herein Paragraphs 1 through 75 of its Counterclaims.

77.     As an alternative claim for relief, and to the extent this Court finds that there is no express contract between the parties with respect to a price escalation clause, Drummond requests that this Court find that Southern Coal has breached an implied contract to pay fair market value for the services Drummond has provided under the Agreement.

78.     The purpose of Section 6.14 of the Agreement is to fairly compensate Drummond for the services provided under the Agreement by indexing payment for those services to the prevailing market prices for metallurgical coal and by adjusting the Throughput Fee to reasonably account for any significant market-wide increase in metallurgical coal prices.   Section 6.14 therefore provides Southern Coal with assurance that the price it pays for the services will be a fair market price.  Both Drummond and the Counterclaim Defendants understood and intended that this was the purpose of Section 6.14 at the time they entered into the Agreement.

79.    At the time the parties entered into the Agreement, there was mutual assent and a meeting of the minds with respect to the agreement that Southern Coal would pay Drummond fair market value in exchange for services provided under the Agreement.

80.    Southern Coal's course of conduct, including its payment of the invoices from Drummond dated October 2016 through January 2017, reflect its intent and agreement to pay the fair market value for those services.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)    Find that an implied in-fact contract exists between Drummond and Southern Coal whereby Southern Coal agreed to pay the fair market value for the services under the Agreement;

(B)    Find that the Southern Coal breached this implied in-fact contract by refusing to pay Drummond the fair market value for the services;

(C)    Award Drummond damages caused by Southern Coal's breach of this implied in-fact contract, including any applicable interest pursuant to Section 15 of the Agreement;

(D)    Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

### COUNTERCLAIM EIGHT - EQUITABLE REFORMATION

81.    Drummond adopts and incorporates herein Paragraphs 1 through 80 of its Counterclaims.

82.     As an alternative claim for relief, Drummond requests that this Court equitably reform the price escalation clause of the Contract to reflect the parties' mutual intent.

83.     At the time Drummond and Southern Coal entered into the Agreement, Drummond and the Counterclaim Defendants believed and assumed that the price of metallurgical coal mined at BHP Billiton's Peak Downs mine and shipped to Japanese steel manufacturers would continue to be regularly published on a quarterly basis for the term of the Agreement.  The parties relied on this mutual belief and assumption in entering into the Agreement, especially with respect to the provisions of Section 6.14 of the Agreement.

84.     Contrary to the parties' mutual belief and assumption, BHP Billiton moved away from quarterly pricing, and therefore the price for metallurgical coal shipped from the Peak Downs mine in Australia to Japanese steel manufacturers was not published quarterly.

85.     The parties' shared belief and understanding that the Peak Downs quarterly benchmark would be regularly published throughout the term of the Agreement constitutes a mutual mistake of fact that existed at the time the parties entered into the Agreement.

86.     As a result of this mutual mistake of fact, the Agreement no longer reflects the parties' intent with respect to the price escalation clause.

87.     Construction of the Agreement to not include a price escalation clause would also be unconscionable, as it would unfairly deprive Drummond of its benefit of the bargain in entering into the Agreement.  Such a construction would also constitute an unearned and unintended financial windfall for Southern Coal, which would not be obligated to pay Drummond a fair market price for the services rendered pursuant to the Agreement.

88.     Drummond's use of the quarterly benchmark published by Doyle Trading to calculate the Throughput Fee was in good faith and consistent with the parties mutual intent and understanding in entering into the Agreement.

WHEREFORE, Drummond requests that the Court award relief in its favor and against the Counterclaim Defendants as follows:

(A)     Find that, by reason of a mutual mistake of the parties, or unconscionability, or both, the Agreement should be equitably reformed to provide that the quarterly benchmark price published by Doyle Trading shall be used to calculate any applicable increases in the Throughput Fee;

(B)     Find that the Agreement, as reformed, constitutes a valid and binding contract amongst the parties;

(C)     Award Drummond damages in the form of past due Throughput Fees owed by Southern Coal, including any applicable interest pursuant to Section 15 of the Agreement;

(D)    Award any other relief, both at law and equity, including all necessary writs, to which Drummond is entitled and this Court deems appropriate.

Date:  May 30, 2017.


Respectfully submitted,

s/ Robert C. Khayat, Jr.
Robert C. Khayat, Jr.
KHAYAT LAW FIRM
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, GA 30309
(404) 978-2750
E-mail:  rkhayat@khayatlawfirm.com

*Attorneys for Drummond Coal Sales, Inc.*


OF COUNSEL:

William Anthony Davis, III
H. Thomas Wells, III (Pro hac vice application to be filed)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL 35259
(205) 868-6000

*Attorneys for Drummond Coal Sales, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 30, 2017**, I electronically filed the foregoing Answer and Counterclaims with the Clerk of the Court using the CM/ECF system which will send electronic notice to all counsel of record.

John K. Larkins, Jr.
CHILIVIS, COCHRAN, LARKINS & BEVER, LLP
3127 Maple Drive, NE
Atlanta, Georgia 30305
(404) 233-4171
Fax:  (404) 261-2842
jkl@cclblaw.com

Jon Hogue
Timothy Murray
MURRAY, HOGUE & LANNIS
3400 Gulf Tower
Pittsburgh, PA 15219
(412) 263-5650
Fax:  (412) 263-5660
jhogue@mhandl.com
tmurray@mhandl.com

*s/ Robert C. Khayat, Jr.*
Robert C. Khayat, Jr.
